**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MARK L. RIGGINS, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-06-761-HE |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, Mr. Mark L. Riggins, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying Mr. Riggins' application for supplemental security income payments. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. It is recommended that the Commissioner's decision be reversed and remanded for an immediate award of benefits because Plaintiff's impairments meet the requirements for a listed impairment. In the alternative, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

---

[1] Michael J. Astrue became Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is hereby substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

I.    **Procedural Background**

Plaintiff protectively filed his application for supplemental security income benefits on August 30, 2002. AR 55, 181. The application was denied initially and upon review. AR 31, 32. Plaintiff requested an administrative hearing, and the hearing was held on February 10, 2004. AR 230-262. An administrative law judge (ALJ) issued an unfavorable decision on March 25, 2004. AR 175-181. Plaintiff appealed, and the Appeals Council remanded the case to another ALJ based on two instances of legal error. First, the ALJ failed to consider a consultative examination which indicated that claimant had significant deficit in the upper extremity secondary to his injury there. Second, the ALJ failed to discuss the factors underlying his credibility finding. AR 182-184.

A supplemental hearing was held before another ALJ on September 14, 2005. AR 263-316. Both a medical expert (ME) and a vocational expert (VE) testified. On November 14, 2005, the ALJ issued an unfavorable decision. AR 18-30. On May 18, 2006, the Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner. AR 3-5.

II.   **The Administrative Decision**

The ALJ applied the five-step sequential evaluation process. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also* 20 C.F.R. §416.920. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of July 17, 2002. AR 21, 29. At step two, the ALJ determined that Plaintiff has "disorders of the back discogenic and degenerative as well as late effects of

2

musculoskeletal injuries" and that these impairments are severe within the meaning of the Social Security regulations. AR 22, 29. At step three, the ALJ considered the listings at 1.04 (disorders of the back) and 1.05 (late effects of musculoskeletal injuries) and determined that Plaintiff's severe physical impairments do not meet or equal either listing.[2] AR 25, 29.

The ALJ next determined Plaintiff's residual functional capacity. The ALJ found that physically Plaintiff has the residual functional capacity to perform a narrow range of light work limited by his inability to stoop, squat, crawl or twist, or to bend more than occasionally, and by the necessity that he avoid moving machinery and heights. AR 27, 29. The ALJ further found that Plaintiff has "delayed ability, mental acuity" and is restricted to jobs that require only "simple 1 to 2 step directions." AR 27, 29.[3]

At step five, the ALJ found that Plaintiff could perform the jobs of ticket seller and parking lot cashier, jobs which the ALJ found to exist in significant numbers both in the local and national economy. *Id*. Therefore, the ALJ determined Plaintiff is not disabled. AR 29, 30.

## III.   Issues Presented for Judicial Review

Plaintiff presents the following issues for judicial review: (1) whether the ALJ erred as a matter of law in her step-three analysis in failing to discuss the mental retardation listing

---

[2]*See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

[3]In the "Conclusion" section set out initially in her decision, the ALJ stated that "claimant has a severe impairment or combination of impairments but retains the residual functional capacity to return to work he performed in the past." AR 21. In the body of the decision and in the Findings section of the decision, however, the ALJ states that Plaintiff cannot return to his past relevant work. AR 28, 30. It appears, therefore, that the initial statement is erroneous.

at 12.05C despite the ME's testimony that Plaintiff met the listing's criteria and whether the ALJ's step-three finding is supported by substantial evidence; and (2) whether the ALJ erred in relying on the VE's testimony that was contrary to the Dictionary of Occupational Titles (DOT) without eliciting a reasonable explanation from the VE for the conflict.

**IV.    Standard of Review**

Because the Appeals Council denied review of the decision rendered by the second ALJ, that decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* 331 F.3d at 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**V.     Analysis**

   **A.     Claim One – The ALJ's Evaluation of Plaintiff's Impairments and Comparison to the Listings**

At step three of the sequential evaluation, the ALJ must determine "'whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity.'" *Lax v. Astrue*, ___ F.3d ___, 2007 WL 1620513 at *4 (10th Cir. Jun. 6, 2007) (*quoting Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)) (to be published). "'If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.'" *Lax*, 2007 WL 1620513 at *4 (*quoting Williams*, 844 F.2d at 751). To demonstrate that an impairment or combination of impairments meets a listing, a claimant must "provide specific medical findings that support each of the various requisite criteria for the impairment." *Id.*

In this case, the ALJ first erred in her analysis of Plaintiff's severe impairments. She included only Plaintiff's physical impairments in her list of severe impairments at step two, despite Plaintiff's having submitted substantial evidence demonstrating that his mental impairment is severe, that is, an impairment which "significantly limit[s] an individual's physical or mental ability to do basic work activities." *Grogan v. Barnhart*, 399F.3d 1257, 1263 (10th Cir. 2005). The Tenth Circuit has held that demonstrating the severity of an impairment is "a 'de minimus' showing at step two of the five-step process." *Id.* (internal citations omitted). Moreover, the ALJ's implicit finding that Plaintiff's mental impairment is not severe is inconsistent with other findings in her decision. For example, in determining

Plaintiff's residual functional capacity (RFC), the ALJ stated, "The claimant has delayed ability, mental acuity and is restricted to simple 1 to 2 step directions." AR 27. Unquestionably, such a mental restriction "significantly limits" Plaintiff's "mental ability to do basic work activities." *See Grogan*, *supra*. The ALJ also stated that Plaintiff's "ability to work is significantly compromised at all exertional levels due to his non-exertional limitation." AR 28. Plaintiff's most significant non-exertional limitation is his mental impairment. The ALJ's RFC finding demonstrates that the ALJ recognized the significant limitation that Plaintiff's mental impairment has on his mental ability to do basic work activities despite her failure to list Plaintiff's mental impairment as severe at step two.

Plaintiff's testimony and objective test scores demonstrate that Plaintiff's mental impairment is severe within the meaning of the regulations. Plaintiff testified that, although he graduated from high school, he had attended special education classes "[e]very [sic] since first grade." AR 269.[4] On December 7, 2004, Plaintiff underwent a battery of tests consisting of the Wechsler Adult Intelligence Scale – III (WAIS III) and the Wide Range Achievement Test-3 (WRAT-3). According to Dr. Annette Miles, Ph.D., who administered the tests, Plaintiff's Verbal IQ score was 68, classified as extremely low, his Performance IQ score was 76, classified as borderline mentally retarded, and his Full Scale IQ score was 69, also classified at extremely low. AR 214. Dr. Miles assessed Plaintiff's Global Assessment

---

[4]Although Plaintiff's testimony is somewhat confusing, he apparently earned credit toward his high school diploma by working full time during his junior and senior years. AR 269. Plaintiff's testimony itself is further evidence of his mental impairment.

6

of Functioning (GAF) score at 41. AR 215.[5] Dr. Miles' assessment of Plaintiff's functioning is consistent with a severe mental impairment. Dr. Miles does not state that Plaintiff was intentionally working below his ability on the tests she administered, and there is no indication in the record that the test scores are not reliable.

The ME, Dr. Thomas N. Lynn, testified that Plaintiff suffers from degenerative disc disease at L5 and S1 and facet arthropathy with symptoms of radiculopathy to the left leg.[6] He noted that Plaintiff has a weakened grip of the right hand because of a previous laceration and surgical repair. The ME also noted that Plaintiff has undergone right knee debridement, that his history of multi drug abuse is in remission, and that he has borderline I.Q. scores. AR 291. More importantly, the ME testified that Plaintiff's combination of impairments meet the listing at 12.05C:

> It's my opinion, that the physical findings by themselves, without consideration of the IQ scores, do not meet or equal a listing of impairment. However, if one considers the IQ scores[,] and I'm now looking at listing 12.05C and that says a valid verbal performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of functioning. And I do think that he has an additional and significant work related limitation of function, so that I would say he meets 12.05C and from 7/17/01, Judge.

AR 292-293. The listing to which the ME referred states:

---

[5]The Global Assessment of Functioning (GAF) is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning" at the time of evaluation. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) ("DSM") at 30-32. "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Id.* at 34. *See also Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004).

[6]As discussed *supra* at 2-3, the ALJ found Plaintiff's back problems to be severe.

> 12.05   Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and signficant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

The ALJ ignored the ME's testimony that Plaintiff's impairments meet the requirements of the listing at 12.05C. In doing so, the ALJ actually misstated the testimony of the ME in this regard:

> Dr. Lynn the medical expert at the hearing testified that the claimant's impairments did not meet or equal a listed impairment in the Code of Federal Regulations[,] and the Administrative Law Judge concurs with this opinion.

AR 26.

This statement is simply wrong. Moreover, the ALJ did not analyze the evidence as it pertains to the listing at 12.05C. She considered only the listings at 1.04 (disorders of the back) and 1.05 (late effects of musculoskeletal injuries). AR 25. The ALJ devoted only two sentences to Plaintiff's mental impairment and the listing at 12.05C, both of which are at least partially erroneous or at least misleading. First, she stated:

> Assuming IQ scores are representative[,] the claimant *would possibly* meet Listing 12.05C from July 17, 2001 to the present.

8

AR 25 (emphasis added).  In fact, however, a claimant who has a reliable full scale IQ score of 69 or a verbal IQ score of 68 combined with a severe physical impairment, meets the listing at 12.05, and the combination of impairments is "conclusively presumed to be disabling[.]"  *See Lax*, 2007 WL 1620513 at *4.

Second, the ALJ stated:

> The claimant has borderline IQ scores but was able to perform both semiskilled and unskilled jobs in the past.

AR 25.  This statement is only partially correct with regard to Plaintiff's IQ scores.  Dr. Miles identified only one "borderline" score – Plaintiff's performance IQ score.  Dr. Miles stated that both Plaintiff's verbal IQ score of 68 and his full scale IQ score of 69 were "extremely low."  AR 214.  To satisfy the mental requirement of the listing at 12.05C, a claimant need demonstrate only that any one of these IQ scores falls between 60 and 70 inclusive.  "'In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.'"  *Lax*,  2007 WL 1620513 at *5 (*quoting* 20 C.F.R., pt. 404, subpt. P, App. 1, § 12.00D(6)(c) (2006)). Moreover, the ALJ's statement regarding Plaintiff's having previously performed semiskilled jobs is somewhat misleading.  The VE identified three jobs in Plaintiff's work history as semi-skilled: cab driver, street maintenance worker, and mobile home set up man.  AR 297. The VE stated, however, that she found only the cab driver position to be inconsistent with Plaintiff's IQ scores.  AR 308.  The VE also stated, however, that Plaintiff had worked as a

cab driver for only six months in 1991, and she also candidly stated that she did not know "how successful he was." AR 309.

The Tenth Circuit has held that an ALJ may properly consider other evidence in the record when determining whether an IQ score is reliable – that is, whether the IQ score accurately reflects a claimant's intellectual functioning. *See Lax*, 2007 WL 1620513 at 6. In *Lax*, the Tenth Circuit affirmed the ALJ's finding that the claimant's "historic capabilities were not consistent with mental retardation." *Id.* at *8. In *Lax*, however, the ALJ was provided with the opinion of the examiner who explicitly questioned the reliability of Lax's IQ scores based on his observation that Lax's "effort was inadequate," that the "information provided by [Lax] and his responses to the testing appeared unreliable" and that Lax's "scores appear to be an under estimation of his cognitive abilities." *Id.* at *6-7.

In this case, however, nothing in the record suggests that Plaintiff's IQ scores were not reliable. The ALJ questioned the VE about the standard error of measurement for the IQ test administered to Plaintiff. The VE stated that the standard error of measurement for the test is 3.7. AR 303. The VE explained that the standard error of measurement means that any given IQ score could actually be 3.7 points lower or 3.7 points higher than the number derived from testing. AR 304. The VE added, however, that "[the test is] usually pretty accurate" and that on a functional level, there is no difference between an individual with an IQ score 3.7 points above or below the reliable score of another individual. *Id.* Moreover, nothing in the regulations suggest that the ALJ can disregard an IQ score based on the standard error of measurement for the testing instrument.

In sum, the ALJ erred at step two in failing to include Plaintiff's mental impairment in her list of severe impairments. The ALJ further erred at step three in failing to consider whether Plaintiff's combination of impairments meets the listing at 12.05C. Finally, if the ALJ's failure to consider Plaintiff's mental impairment severe is based on her rejection of Plaintiff's IQ test scores as unreliable, that finding is not supported by substantial evidence in the record. "[A] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (internal quotation and citation omitted).

Plaintiff seeks an immediate award of benefits in this case. "Whether or not to award benefits is a matter of . . . discretion." *Id.* at 626 (*citing Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993)). "Some of the relevant factors [to] consider are the length of time the matter has been pending and whether or not[,] given the available evidence, remand for additional fact-finding would serve [any] useful purpose" or whether remand "would merely delay the receipt of benefits." *Id.* (internal citations and quotations omitted). In *Salazar*, the claimant had applied for benefits more than five years before the Tenth Circuit heard her appeal. In the meantime, the claimant had filed another application for benefits and was receiving benefits as a result of her second application. The Court found that no additional useful information could be derived from a remand. In this case, Plaintiff applied for benefits in August 2002, almost five years ago. The Plaintiff has appeared at two hearings and has undergone IQ testing the results of which are apparently reliable. As in *Salazar*, it appears that no additional useful information is likely to be derived from further proceedings. It is

therefore recommended that this Court find that Plaintiff's impairments meet the requirements for listing 12.05C and that Plaintiff is therefore entitled to an immediate award of benefits.

### B.     Claim Two – Conflicts between the DOT and the Testimony of the VE

Should this Court find that Plaintiff is not entitled to an immediate award of benefits based on the ALJ's erroneous step three analysis and findings, the case should nevertheless be remanded.  Plaintiff contends that a discrepancy exists between the Dictionary of Occupational Titles (DOT) listings and the VE's testimony and that the ALJ erred in failing to elicit testimony from the VE to reconcile the differences.  This point is well-taken.  "An ALJ does have a duty to investigate and obtain a reasonable explanation for any conflict between the DOT and expert testimony before the ALJ may rely on the expert testimony as substantial evidence."  *Hackett v. Barnhart*  475 F.3d 1166, 1171 (10th Cir. 2007) (*citing Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999)).

Despite her failure to find at step two that Plaintiff's mental impairment is severe, the ALJ nevertheless found in her RFC that Plaintiff "has delayed ability, mental acuity and is restricted to simple 1 to 2 step directions."  AR 27.  There are six levels of reasoning development recognized in the DOT.  Level 1 is the lowest reasoning development level. This level requires a worker to "[a]pply commonsense understanding to carry out simple one-or-two-step instructions."  *Dictionary of Occupational Titles*, Appendix C.  This description is consistent with the ALJ's findings regarding Plaintiff's reasoning abilities.  The VE identified two jobs which Plaintiff could allegedly perform: ticket seller (ticket taker) listed

in the DOT at 344.667-010 and parking lot cashier (cashier II) listed in the DOT at 211.462-010. AR 314. The first job requires a reasoning level of 2, and the second requires a reasoning level of 3. Having failed to elicit an explanation of the discrepancies between the VE's testimony and the DOT listings, the ALJ's finding that Plaintiff could perform the jobs identified by the VE is not supported by substantial evidence. *See Haddock* at 1091("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."). On remand, the ALJ should address the apparent conflicts between the vocational expert's testimony and the applicable DOT listings and develop the record by obtaining vocational expert testimony to address these apparent conflicts.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for an immediate award of benefits. In the alternative, it is recommended that this case be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## **NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by July __30th__, 2007. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of

the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __9th__ day of July, 2007.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE